1  Michael B. Mattingly *(Pro Hac Vice Pending)*
   michael.mattingly@dinsmore.com
2  Robert D. Prine (312432)
   robert.prine@dinsmore.com
3  Dorota A. James (309933)
   dorota.james@dinsmore.com
4  DINSMORE & SHOHL LLP
   655 W. Broadway, Suite 800
5  San Diego, CA 92101
   Ph: (619) 400-0500
6  Fx: (619) 400-0501

7  Attorney for Defendant,
   UNITED PARCEL SERVICE, INC.
8

9               **UNITED STATES DISTRICT COURT**

10              **NORTHERN DISTRICT OF CALIFORNIA**

11

12 | TAMI RANKINS,                              | Case No.:
13 |        Plaintiff,                          | **NOTICE OF REMOVAL**
14 | v.                                         | **DEMAND FOR JURY TRIAL**
15 | UNITED PARCEL SERVICE, INC.; and           | Dept.: TBD
   | DOES 1 through 20, inclusive,              | Judge: TBD
16 |                                            | Complaint Filed: August 11, 2023
   |        Defendant.                          | Trial Date:      Not Yet Set
17
18
19
20

21      United Parcel Service, Inc. (hereinafter "Defendant" or "UPS"), by counsel and
22 pursuant to 28 U.S.C. sections 1331, 1332, 1441, and 1446, hereby gives notice of the
23 removal of the above-styled action to this Court. In support of its Notice of Removal,
24 Defendant states as follows:

25              **I.     THE STATE COURT ACTION**

26      1.    On August 11, 2023, Plaintiff Tami Rankins ("Plaintiff") filed a complaint
27 against Defendant in the Superior Court of Alameda, California in the matter entitled
28 *Tami Rankins v. United Parcel Service, Inc. and DOES 1-12,* Case No. 23CV040513

(the "State Court Action"). In accordance with 28 U.S.C. § 1446(a), a true and correct copy of the Complaint, summons, and all process and pleadings, which were deemed served upon Defendant in the State Court Action on October 10, 2023, are attached hereto as **Exhibits A - D**.

2. While Defendant contends that the allegations in Plaintiff's Complaint lack merit, Plaintiff alleges the following causes of action against Defendant: (1) Retaliatory Disparate Treatment in Violation of Public Policy; (2) Harassment based on Race in violation of Cal. Gov. Code § 12940(j); (3) Discrimination in violation of Cal. Gov. Code §§ 12900 et seq. (California Fair Employment and Housing Act); (4) Intentional Infliction of Emotional Distress; (5) Breach of Contract. *See* Ex. A, Complaint, at pg. 1.

3. No further proceedings have occurred in the State Court Action.

4. To the best of Defendant's knowledge, although fictitious "Doe" Defendants are listed on the Complaint, no other defendants have been properly named or served with the Complaint. For purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1).

5. Defendant United Parcel Service, Inc. was served with, and actually received copies of the State Court Action on October 10, 2023, within thirty (30) days of this Notice of Removal.

## II.   REMOVAL PROCEDURES AND VENUE

6. Defendant has not filed an answer or otherwise responded to the Complaint. This Notice of Removal is filed within thirty (30) days of Defendant's notice of the lawsuit and is timely filed in accordance with 28 U.S.C. § 1446(b). Furthermore, this Notice of Removal is filed less than one (1) year from the commencement of this action pursuant to 28 U.S.C. § 1446(c)(1).

7. In accordance with 28 U.S.C. § 1446(d), Defendant will promptly provide written notice of the filing of this Notice to Plaintiff.

///

8. Pursuant to 28 U.S.C § 1446(d), Defendant will also file a duplicate copy of this Notice with the Clerk of the Superior Court for Alameda, California.

9. In accordance with 28 U.S.C. § 1446(b), venue is properly placed in the United States District Court for the Northern District of California because it is the district court for the district where the State Court Action is pending (Superior Court for the State of California, County of Alameda).

10. Further, this action is not an action made non-removable by 28 U.S.C. § 1445(c).

### III. COMPLETE DIVERSITY OF CITIZENSHIP JURISDICTION

#### A. The Parties Are Citizen Of Different States

11. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332, diversity jurisdiction, as this is a civil action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

12. Plaintiff is an individual domiciled in the state of California. *See* Ex. A, Complaint, at ¶ 10. Therefore, based on Plaintiff's Complaint, Plaintiff, who resides in the San Francisco Bay Area, CA, was and is a citizen of the State of California when this action was filed in state court, at the time of removal, and at all other times throughout the pendency of this case, and is, therefore, a citizen of California within the meaning of 28 U.S.C. § 1332.

13. For the purposes of diversity jurisdiction, a corporation is considered a citizen of both the state in which it is incorporated and the state in which its principal place of business is located. Defendant United Parcel Service, Inc. is a corporation incorporated in the state of Ohio. Accordingly, Defendant United Parcel Service, Inc. is a citizen of the state of Ohio.

14. In determining whether a civil action is removable on the basis of jurisdiction arising under 28 U.S.C. § 1332, the citizenship of defendant sued under fictitious names, such as John Doe, is disregarded. See U.S.C. § 1332(b)(1).

///

15. Based on the foregoing paragraphs, the requirement of complete diversity of citizenship is satisfied in this case.

## B. The Amount In Controversy Exceeds An Aggregate Of $75,000, Exclusive Of Interest And Costs

16. The Federal Court's Jurisdiction and Venue Clarification Act of 2011 ("JVCA"), which applies to state and federal lawsuits commenced on or after January 6, 2012, defines the standard for showing the amount in controversy. Pub. L. 112-63, Title II, § 205. Under the JVCA, Congress clarified that the preponderance of the evidence standard applies to removals under 28 U.S.C. § 1332(a). See H.R. Rep. 112-10 at 16 ("defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met"). 28 U.S.C. § 1446(c)(2)(A) provides, in relevant part, that "the notice of removal may assert the amount in controversy if the initial pleading seeks … a money judgment, but the State practice … permits recovery of damages in excess of the amount demanded." Under these circumstances, "removal of the action is proper on the basis of an amount in controversy … if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)," or $75,000. 28 U.S.C. § 1446(c)(2)(B). Accordingly, a removing defendant must only demonstrate that the amount in controversy is more than $75,000 by a preponderance of the evidence, not to a legal certainty.

17. The United States Supreme Court held that, "as specified in §1446(a), a defendant's notice of removal need include only a *plausible allegation* that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554 (emphasis added). The Ninth Circuit has also rejected application of the legal certainty standard for removals. See *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. Aug. 27, 2013) ("A defendant seeking removal … must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum").

18. The burden in meeting the amount in controversy is low and a defendant may rely on plaintiff's allegations, and provide supplementary facts or numbers upon which the amount in controversy can reasonably be calculated. See *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008); *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (allowing the use of "Defendant's own numbers" for "purposes of analyzing the amount in controversy").

19. In determining the amount in controversy, the Court must consider the aggregate of general damages, special damages, punitive damages, and attorneys' fees. *Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory); see also *Bank of Calif. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972).

### C. Plaintiff's Claims for Emotional Distress Place $75,000 in Controversy

20. Plaintiff alleges she suffered "severe" emotional distress as a result of Defendant's alleged conduct, and seeks damages for such emotional injury. *See* Ex. A, Complaint, at ¶ 94. While Plaintiff does not state a specific amount of damages for emotional distress, "the vagueness of plaintiffs' pleadings with regard to emotional distress damages should not preclude this court from noting these damages are potentially substantial." *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995) (plaintiff's failure to make explicit demands did not prevent satisfaction of amount in controversy).

21. Although Plaintiff's emotional distress damages are disputed, and Defendant reserves the right to vigorously oppose all of Plaintiff's claimed damages, past awards for emotional distress in discrimination and wrongful termination cases have easily exceeded $75,000. See, e.g., *Diaz v. Tesla*, Case No.: 3:17-cv-06748 2021 (N.D. Cal. Oct. 4, 2021) ($4,500,000 past emotional distress); *Glenn-Davis v. Cit of Oakland, Inc.*, Case No.: 3:02-cv-02257-SI (N.D. Cal. 2006) ($1,850,000 emotional distress); *Siam v. John Potter, et al.*, Case No.: C 04-0129 MHP, JVR No. 1412040011,

2014 WL 7017660 (S.D. Cal. Nov. 17, 2014) ($250,000 for pain and suffering); *Newton v. Equilon Enterprises,* Case No.: 17-cv-3961-YGR (awarding the plaintiff $475,000 for all past and future mental suffering and emotional distress damages for wrongful termination, discrimination and harassment based on her sex); *Ismen v. Beverly Hospital,* 2008 WL 4056258 (Los Angeles Super Ct.) ($113,100 for emotional distress damages for discrimination). As such, Plaintiff's prayer for emotional distress damages demonstrates, at the time of removal, the amount in controversy exceeds $75,000.

### D. Plaintiff's Claims for Attorneys' Fees Pursuant to a FEHA Claim Place $75,000 in Controversy.

22.   Plaintiff also seeks an award of attorneys' fees. *See* Ex. A, Complaint, Prayer, Pg. 16. Attorneys' fees are properly considered in calculating the amount-in-controversy for purposes of removal on grounds of diversity jurisdiction. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory).)

23.   Defendant disputes all of Plaintiff's claims, including those for attorney's fees; however, the Court may consider all attorneys' fees that at the time of removal can reasonably be anticipated will be incurred over the life of the case. See *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) (noting that "potential attorneys' fees" could be considered for purposes of meeting the amount in controversy requirement). In employment cases, fee awards can exceed $75,000 amount in controversy requirement for diversity jurisdiction. See *Akers v. Cnty. of San Diego*, 95 Cal. App. 4th 1441, 1445 (2002) (affirming attorney's fees greater than $75,000 in gender discrimination case); *Bucci v. Chromalloy American Corp.* et al.; Case No.: CV-85-8768-TEH (N.D. Cal. 2021) (awarding $262,759 in attorney's fees in an individual sexual harassment and sex discrimination case.) Thus, Plaintiff's claims for attorneys' fees more likely than not exceed the jurisdictional minimum of $75,000.

### E. Plaintiff's Claims for Punitive Damages Place $75,000 in Controversy

24. Plaintiff also seeks punitive damages. *See* Ex. A, Complaint, Prayer, P. The Court must consider Plaintiff's request for these damages in determining the amount in controversy. *Davenport v. Mutual Benefit Health and Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law). Courts have affirmed jury verdicts exceeding $75,000 in punitive damages in alleged wrongful termination cases. See, e.g., *Juarez*, JVR No. 1412040011, 2014 WL 7017660 (S.D. Cal. Nov. 17, 2014) (over $75,000 granted in punitive damages); *Allen v. Radio Shack Corporation, Inc.*(what does this case stand for?). Thus, although Defendant disputes Plaintiff's claims for punitive damages, Plaintiff's prayer for the same demonstrates that the amount in controversy for this claim alone exceeds $75,000.

### F. The Amount In Controversy Exceeds $75,000.

25. Solely for purposes of determining the amount in controversy at the time of removal, Plaintiff's total alleged emotional distress damages, attorneys' fees and punitive damages "more likely than not," exceed the minimum $75,000 amount required for diversity jurisdiction. *Sanchez v. Monumental Life Ins. Co.*, 95 F.3d 856, 860 (9th Cir.) opinion amended and superseded on denial of reh'g, 102 F.3d 398 (9th Cir. 1996).

26. By estimating the amount Plaintiff may recover, Defendant does not concede that Plaintiff will prevail on her claims or that, if she prevails, she is entitled to damages in any particular amount or at all. In fact, Defendant expects to prevail in this matter. Defendant reserves the full right to dispute Plaintiff's any and all claims with respect to both liability and damages.

27. Since diversity of citizenship exists between the Plaintiff and Defendant, and the matter in controversy between the parties is in excess of $75,000, this Court has original jurisdiction of the action pursuant to 28 U.S.C. section 1332(a)(1). This action is therefore properly removed to this Court.

## IV. FEDERAL QUESTION JURISDICTION

28. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(a), as this is a civil action arising under the Constitution, laws, or treaties of the United States.

29. Plaintiff's Fifth Cause of Action for breach of contract is based upon or preempted by federal law, specifically Section 301 of the Labor Management Relations Act ("LMRA") ("Section 301"). 29 U.S.C. § 185. Under Section 301, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in a district court for the United States having jurisdiction of the parties without regard to the amount in controversy or without regard to the citizenship of the parties." *Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000).

30. Section 301 of the LMRA provides a basis for federal jurisdiction, and Authorizes federal courts to *develop a federal common law of CBA interpretation. Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988). To ensure uniform interpretations of collective bargaining agreements, federal common law preempts the use of state law in collective bargaining agreement interpretation and enforcement. *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. V. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962); *Lingle*, 486 U.S. at 411.

31. Section 301 has specifically been held to preempt California state law claims that are substantially dependent upon interpretation of a CBA. *Firestone, 219 F*.3d at 1066-67 (claim preempted by Section 301 where the CBA had to be interpreted to resolve the plaintiff's wage claims). This remains true even where interpretation was required to evaluate the employer's defense to a plaintiff's state law cause of action. See *Levy v. Skywalker Sound*, 108 Cal. App. 4th 753, 769 (2003) (claim for unpaid wages preempted because it "rest[ed] entirely" on a claim that plaintiff was "entitled . . . to wages at the level set by the CBA").

32. Adjudicating Plaintiff's claims as alleged in her operative Complaint will require interpretation of UPS's National Master Agreement with the International Brotherhood of Teamsters ("Agreement"), and its Northern California Supplemental Agreement with Teamster Local Union No. 70 (collectively, the "CBA"), copies of which are attached to Declaration of Lori Cruz ("Cruz Decl.") as Exhibits C and D, respectively. Thus, Section 301 completely preempts these claims, rendering them removable based on federal question jurisdiction. *See, e.g.*, *Lingle*, 486 U.S. at 405-06 ("[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state *law . . . is pre-empted"*).

### A. **Plaintiff's Employment is Governed by a CBA.**

33. Plaintiff has been employed by UPS since March 15, 1989 when she was hired as package driver. Over the course of her employment, she has been promoted to hub/feeder positon and, has been currently working as an International Auditor and Irregular Pick off at the UPS hubs in Oakland, CA. *See* Ex. A, Complaint, at ⁋ 23. Her current hourly pay rate is $39.14. At all relevant times alleged in the Complaint, the terms and conditions of Plaintiff's employment have been subject to a CBA between Plaintiff and the Union (International Brotherhood of Teamsters 0392 - T0952.)

34. At all relevant times alleged in the Complaint, UPS has been, and is, a company engaged in commerce and in an industry affecting commerce within the meaning of Sections 2(2), 2(6), and 2(7) of the NLRA and Section 301(a) of the LMRA, 29 U.S.C. §§ 152(2), (6), (7) and 185(a). 12. The Union is a labor organization in which almost all non-exempt employees of UPS are members and which exists for the purpose of dealing with employees concerning grievances, labor disputes, wages, rates of pay, hours of employment, conditions of work, discipline, and discharge.

35. At all relevant times, the Union has been, and is, a labor organization within the meaning of Section 2(5) of the NLRA and 301(a) of the LMRA, 29 U.S.C. §§ 152(5) and 185(a).

36. The CBA specifically recognizes the Union as the exclusive representative for covered employees for the purposes of collective bargaining to establish rates of pay, hours of work and other conditions of employment. The CBA also provides for wages, hours of work, and working conditions of employees, meal periods, paid sick pay, final and binding arbitration of disputes concerning application any provision contained within the CBA, premium wage rates for all overtime hours worked, and a regular hourly rate of pay.

37. The CBA also sets forth policies and procedures regarding hiring standards, hiring disputes, seniority, and job assignments (see Ex. D., Northern California Supplemental Agreement, at Article 2, Sections 3 & 7 and Article 3, Sections 1, 2 & 5-12), employment discrimination (see Ex. D, Northern California Supplemental Agreement, at Article 5), and wage and hour conditions (see Ex. D, Northern California Supplemental Agreement, at Article 21, Sections 1 & 2, and Article 22; see also Ex. C, UPS National Master Agreement, at Article 41), all of which are at issue in this matter.

38. Thus, Plaintiff's breach of contract claims she alleged in her Complaint ¶¶ 98-105 are preempted by Section 301 of the LMRA, 29 U.S.C. § 185 because they either arise exclusively out of the CBA between an employer and a union or require a substantial interpretation of the CBA.

39. Plaintiff's Claims Are Preempted by the LMRA Because They Require Substantial Interpretation of a CBA.

B. **Plaintiff's Failure to Reference Section 301 of the LMRA in Her Complaint Does Not Preclude Removal**

40. Plaintiff's Complaint omits the fact that Plaintiff was a member of the Union and employed by UPS through a CBA. However, a plaintiff may not be permitted to "artfully plead" his complaint to conceal the true nature of the complaint. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (holding that plaintiff's state law claim was preempted even though operative complaint made no mention of a collective bargaining agreement). Thus, the fact that Plaintiff has not made

specific reference to Section 301 in her Complaint does not preclude removal. The Court may properly look beyond the face of the Complaint to determine whether the claims asserted are in fact preempted by Section 301. See *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003). Additionally, the Court may properly look to the facts stated in the Notice of Removal "to clarify the action a plaintiff presents and to determine if it encompasses an action within federal jurisdiction." *Schroeder v. Trans World Airlines, Inc.,* 702 F.2d 189, 191 (9th Cir. 1983), overruled in part on other grounds in *Moore-Thomas v. Alaska Airlines, I*nc., 553 F.3d 1241 (9th Cir. 2009).

41. An artfully pled state law claim is properly "re-characterized" as a federal claim under the "complete preemption" doctrine, which provides that the preemptive force of Section 301 of the LMRA, "converts an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" and is removable to federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).

42. Here, as set forth below, the claims asserted in Plaintiff's Complaint are "founded directly on rights created by collective bargaining agreements" and/or are substantially dependent on an analysis and interpretation of a collective bargaining agreement. See *Hayden v. Reickerd*, 957 F.2d 1506, 1509 (9th Cir. 1991).

**C.** **Resolution of Plaintiff's Claims Will Require Substantial Interpretation of Various Provisions of the CBA.**

43. The Court cannot simply look to state law to resolve Plaintiff's artfully pled claims for breach of a CBA. Thus, Plaintiff's claims cannot be adjudicated without interpretation of numerous CBA provisions that govern Plaintiff's employment.

44. Plaintiff alleges that Defendant breached an employment contract between the parties. *See* Ex. A, Complaint, at ¶¶ 98-105. Though Plaintiff does not specify how or when Defendant breached this contract, the Court would have to look beyond state law to resolve Plaintiff's contractual claim rooted in the CBA. Notably,

the Court has to adjudicate Plaintiff's breach of contract claim by interpreting numerous CBA provisions governing her employment, including her wages.

45. The applicable CBA contains specific language governing the union members' wages, specifically minimum, regular, and overtime wages. The CBA also provides for a grievance process and requires binding arbitration to resolve any disputes arising under the CBA. Furthermore, the CBA extensively describes the process for promoting employees.

46. Thus, the breach of contract claim Plaintiff alleges in her Complaint (¶¶ 98-105) is preempted by Section 301 of the LMRA, 29 U.S.C. § 185 because it arises exclusively out of the CBA between an employer and a union and requires a substantial interpretation of the CBA.

### D.      Grievance and Arbitration Procedure:

47. The grievance and arbitration procedure articulated in the CBA governs any "grievances and/or questions of interpretation arising under this [Agreement]" between the Employer and the Union. *See* Ex. C, UPS National Master Agreement, at Article 8; Ex. D, Northern California Supplemental Agreement, at Article 7. Plaintiff's claims for lost earnings and the alleged gender and racial discrimination must be brought pursuant the grievance procedure, as these claims arise exclusively out of the CBA. *See* Ex. C, UPS National Master Agreement, at Article 8; Ex. D, Northern California Supplemental Agreement, at Article 7. Furthermore, the CBA requires the parties to submit to binding arbitration for any disputes that are unable to be resolved using the grievance process. *See* Ex. C, UPS National Master Agreement, at Article 8, Section 4; Ex. D, Northern California Supplemental Agreement, at Article 7, Section 2. To the extent Plaintiff contends the CBA is inapplicable to those claims, then arbitration procedure is still mandated because such a contention is disputed and the CBA explicitly requires that any questions of interpretation of the Agreement shall be subject to the grievance procedure.

///

48. The promotion of extra-judicial dispute resolution is another purpose of Section 301 preemption. State court lawsuits properly removed on preemption grounds must be deferred to arbitration, if the parties to the CBA have so agreed. See *Livadas v. Bradshaw*, 512 U.S. 107, 142 fn. 18 (1994). Here, the parties have so agreed, and the claims are therefore subject to arbitration as discussed above. An alleged violation of the CBA is subject to the grievance procedures set forth therein. The Court will be required to determine whether Plaintiff were first required to exhaust the grievance procedures, whether they did in fact exhaust those procedures, and whether the parties agreed to arbitrate all or some of Plaintiff's claims – which are all questions reserved for federal courts under the LMRA.

49. Accordingly, Plaintiff's claims for the underpayment of her wages arise out of the CBA and substantially dependent upon the interpretation of the foregoing CBA terms and provisions. In fact, those terms and provisions govern nearly all of the conduct forming the basis for Plaintiff's Complaint, and thus are essential to the resolution of Plaintiffs claims. As such, each of Plaintiff's claims arises under Section 301 of the LMRA, and is therefore preempted by federal law. Removal to federal court is warranted.

## V.  SUPPLEMENTAL JURISDICTION

50. To the extent there are some claims alleged in the Complaint that do not raise federal questions (and/or are not preempted by Section 301 of the LMRA), such claims are removable under 28 U.S.C. § 1441(c) and, pursuant to this Court's supplemental jurisdiction, under 28 U.S.C. § 1367, because they relate to and emanate from the same employment relationship between Plaintiff and Defendant that is the subject of the federal question claims. This Court has jurisdiction over such state law claims pursuant to the doctrine of supplemental jurisdiction under 28 U.S.C. §1367(a), because they are so related to the federal claims as to form part of the same case or controversy under Article III of the U.S. Constitution, and they are substantially related to and rise out of the same nucleus of operative facts as Plaintiff's claims arising under

the LMRA such as they should be tried in one action. See *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 714 (9th Cir. 1990). Considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims in the Complaint as well. See *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–26 (1966).

## VI.    RESERVATION OF RIGHTS

51. Defendant denies the allegations contained in Plaintiff's Complaint. Defendant files this Notice of Removal without waiving any defenses, objections, exceptions, or obligations that may exist in its favor in either state or federal court.

52. Further, in making the assertions in this Notice of Removal, Defendant does not concede in any way that Plaintiff has alleged causes of action upon which relief can be granted, that the allegations or inferences drawn therefrom are accurate, or that Plaintiff is entitled to recover any amounts sought.

53. Defendant further reserves the right to amend or supplement this Notice of Removal as appropriate.

WHEREFORE, Defendant respectfully request that this action be removed to the United States District Court for the Northern District of California, and the Superior Court of Alameda proceed no further with respect to this action.

Dated: November 9, 2023

Respectfully submitted,

DINSMORE & SHOHL LLP

By: /s/ Robert D. Prine
Robert D. Prine
Attorney for Defendants,
UNITED PARCEL SERVICE, INC.

# CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on November 9, 2023, a true copy of this document was served by electronic mail upon all registered CM/ECF users, and by United States Postal Service upon all non-registered CM/ECF users in this case as indicated below:

Tiega-Noel Varlack, Esq.
**VARLACK LEGAL SERVICES**
Gatehouse Plaza II
1260 B. St., Ste. 350
Hayward, CA 94541
T: (510) 397-2008
F: (510) 397-2997
E: tiega@varlacklegal.com
tristan@varlacklegal.com

I declared under penalty of perjury under the laws of the United States of America that the above is true and correct.

/s/ Robert D. Prine
Robert D. Prine