1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    TAMI RANKINS,                              Case No.  3:23-cv-05785-JSC

                 Plaintiff,
8
                                                **ORDER RE: DEFENDANT'S MOTION**
9          v.                                   **TO DISMISS**

10   UNITED PARCEL SERVICE, INC.,               Re: Dkt. No. 5

                 Defendant.
11

12

13         Tami Rankins sued United Parcel Service, Inc. ("UPS") in California state court, alleging

14   UPS discriminated against her because of her age and gender, intentionally inflicted emotional

15   distress through that discrimination, and breached her employment contract with the company, in

16   violation of California laws. (Dkt. No. 1-1 ¶ 1.)[1]  UPS then removed this action to federal court.

17   (Dkt. No. 1.)  Now pending before the Court is UPS's motion to dismiss.  (Dkt. No. 5.)  Having

18   carefully considered the briefing, the Court concludes oral argument is not required, *see* N.D. Cal.

19   Civ. L.R. 7-1(b), and GRANTS Defendant's motion with leave to amend.

20                                     **BACKGROUND**

21   **I.     COMPLAINT ALLEGATIONS**

22         Rankins was hired by UPS on March 15, 1989.  (Dkt. No. 1-1 ¶ 23.)  Rankins is a "woman

23   over forty years of age."  (*Id.* ¶ 10.)  Starting in the fall of 2017, and lasting "more than 5 years,

24   two of [Rankins's] fellow employees" frequently "verbally assaulted and threatened" Rankins.

25   (*Id.* ¶ 24.)  In October of 2017 a co-worker made "various jeers and comments aimed at Rankins

26   during their work."  (*Id.* ¶ 28.)  "Many of these comments pertained to Rankins' gender."  (*Id.*)  In

27   _____

28   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

November of 2017, the same employee "questioned" Rankins's "seniority despite" Rankins "clearly being the senior employee with almost 30 years of experience." (Dkt. No. 1-1 ¶ 30.)

On May 10, 2018, Rankins and a co-worker had a "confrontation" where the co-worker "threatened to physically beat Rankins as well as insulted her for her weight calling her a 'fat bitch.'" (*Id.* ¶ 34.) This coworker "continually would walk toward Rankins with his fists clenched and his chest raised in an intimidating manner." (*Id.*) In 2020, for months, co-workers leered and taunted Rankins "daily." (*Id.* ¶ 47.) At one point, a co-worker pointed to Rankins and stated, "Mirror Mirror on the wall, who's the fattest of them all," then laughed with another co-worker. (*Id.* ¶ 48.)

As a result of Defendant's acts, Plaintiff "has been harmed in that she suffered deterioration of health; loss of job; and the loss of salary, wages, bonuses, and benefits that she would have received but for the wrongful termination." (*Id.* ¶ 50.)

## DISCUSSION

### I. DISPARATE TREATMENT IN VIOLATION OF PUBLIC POLICY (FIRST CAUSE OF ACTION)

Plaintiff's first cause of action is titled "Retaliatory Disparate Treatment in Violation of Public Policy" in the caption (Dkt. No. 1-1 at 2), and "Disparate Treatment in Violation of Public Policy" in the cause of action section. (*Id.* at 11.) UPS argues that "[n]either of these things is actually a common law cause of action," and "Plaintiff's First Cause of Action appears to be a discrimination claim, and thus some permutation of a FEHA claim[]." (Dkt. No. 5 at 9 n.2.) Plaintiff did not address this cause of action in her response.

The complaint is unclear as to whether the first cause of action is a common law claim or a Fair Employment and Housing Act ("FEHA") claim. FEHA explicitly disclaims any intent to "repeal any provisions of . . . . law . . . relating to discrimination." Cal. Gov't Code § 12993. In *Rojo v. Kliger*, the California Supreme Court held the "common law of this state provides any number of remedial theories to compensate for injuries "relating to discrimination." 52 Cal. 3d 65, 74 (1990). For example, California recognizes a common law cause of action for wrongful termination in violation of public policy, including gender discrimination and age discrimination.

2

1    *See Badih v. Myers,* 36 Cal. App. 4th 1289, 1296 (1995) ("Since article I, section 8 [of the

2    California Constitution] expresses a fundamental public policy against sex discrimination in

3    employment . . . [a plaintiff] was properly allowed to maintain her cause of action for wrongful

4    discharge in contravention of public policy."); *Stevenson v. Superior Ct.*, 16 Cal. 4th 880, 885

5    (1997) (holding "the policy prohibiting employment discrimination against older workers satisfies

6    each of the criteria this court has established as necessary to support a common law action for

7    tortious wrongful discharge.").  However, Plaintiff's first cause of action does not allege any of

8    these theories.

9        Similarly, if Plaintiff intends to allege a FEHA violation in her first cause of action, the

10   complaint does not specify which FEHA provision Plaintiff alleges UPS violated.  FEHA provides

11   for retaliation claims, Cal. Gov't Code § 12940(h), as well as discrimination claims, Cal. Gov't

12   Code § 12940(a).  But, again, Plaintiff's complaint does not allege either of these provisions as the

13   basis for her first cause of action.

14       Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim."

15   Fed. R. Civ. Pro. 8(a)(2).  Because the Court cannot ascertain the basis of Plaintiff's first cause of

16   action, the claim is DISMISSED.  If Plaintiff intends to proceed with this cause of action, she

17   must clarify the basis of this claim in any amended complaint.

18   **II.     FEHA (SECOND AND THIRD CAUSES OF ACTION)**

19       Plaintiff's second and third causes of action allege FEHA violations.  Defendant moves to

20   dismiss these claims for failure to exhaust administrative remedies.  "Before filing a civil action

21   alleging FEHA violations, an employee must exhaust his or her administrative remedies."  *Wills v.*

22   *Superior Ct.*, 195 Cal. App. 4th 143, 153 (2011), *as modified on denial of reh'g* (May 12, 2011);

23   *see also* Cal. Gov't Code § 12965.  Under FEHA, employees who believe they have suffered

24   discrimination first file a complaint with the Department of Fair Employment and Housing

25   ("DFEH").  *Schifando v. City of Los Angeles*, 31 Cal. 4th 1074, 1081–82 (2003), *as modified*

26   (Dec. 23, 2003).  This complaint "must . . . identify[] the conduct alleged to violate FEHA."

27   *Wills*, 195 Cal. App. 4th at 153.  The DFEH then investigates the claims, and either issues "an

28   accusation for hearing before the Commission" or provides the complainant with a "right-to-sue

United States District Court
Northern District of California

3

letter." *Schifando*, 31 Cal. 4th at 1082.  Once the complainant receives the Right to Sue letter, she can bring her claims as a civil action in court.  *Id.* The ensuing "civil action's permissible scope" is limited "to the information brought to DFEH's attention when it conducts an administrative investigation, or to information DFEH reasonably should have discovered during its investigation." *Wills*, 195 Cal. App. 4th at 153.

The complaint alleges:

> Plaintiff completed all necessary administrative steps concerning her employment law claims. Following my complaint lodged with the California Department of Fair Employment and Housing (DFEH) on February 24, 2020, the DFEH granted plaintiff the Right to Sue. This confirms plaintiff's exhaustion of administrative remedies as required by law. Attached hereto as Exhibit A is plaintiff's Right to Sue notice from the DFEH.

(Dkt. No. 1-1 ¶ 22.)  Exhibit A, however, is not a Right To Sue letter, but instead a DFEH complaint filed October 7, 2022 alleging UPS took adverse actions against Plaintiff on October 6, 2022.  (Dkt. No. 1-1 at 19-22.)  Moreover, Plaintiff has not attached any DFEH complaint dated February 24, 2020, or any Right to Sue letter related to such a complaint.  Given this inconsistency, and the confusion over whether Plaintiff's complaint in this case relies on a DFEH complaint from 2020 or 2022, Plaintiff's FEHA claims must be DISMISSED for failure to exhaust.

## III.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM (FOURTH CAUSE OF ACTION)

Plaintiff's fourth cause of action alleges Defendant's "conduct in allowing the abuse of Plaintiff . . . was extreme and outrageous and went beyond all bounds of decency," and therefore constituted intentional infliction of emotional distress under California law.  (Dkt. No. 1-1 ¶ 93.) Under California law:

> [T]o state a cause of action for intentional infliction of emotional distress a plaintiff must show: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

*Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228,

United States District Court
Northern District of California

1259 (2005) (cleaned up).  Outrageous conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized society."  *Id.* (quotations and citations omitted).  Threats of physical violence can qualify as such outrageous conduct.  *See Kiseskey v. Carpenters' Tr. for So. California*, 144 Cal. App. 3d 222, 230 (1983).

Defendant contends Plaintiff does not sufficiently allege "outrageous conduct."  According to Defendant, "Plaintiff's Complaint contains exactly the sort of garden-variety employment discrimination/harassment allegations that have been held insufficient to support an [intentional infliction of emotional distress claim."  *Id.*

Defendant cites to *Hobdy v. Los Angeles Unified Sch. Dist.*, 386 F. App'x 722, 725 (9th Cir. 2010), as holding "negative performance reviews that allegedly discriminated against plaintiff's race and gender were insufficient to state an [intentional infliction of emotional distress] claim."  (Dkt. No. 5 at 11.)  However, *Hobdy* explained "some" but not all "employment discrimination cases will have fact patterns sufficient to qualify as extreme and outrageous conduct."  *Id.; see also Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996) ("A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged.  If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination.").  So, the Court must analyze the factual allegations alleged to determine whether Plaintiff sufficiently pleads a claim for intentional infliction of emotional distress.

Here, the intentional infliction claim alleges "Defendants' [sic] conduct in allowing the abuse of Plaintiff as described above was extreme and outrageous and went beyond all bounds of decency."  (Dkt. No. 1-1- ¶ 93.)  But while Plaintiff asserts Moses Young, her co-worker, "threatened to physically beat" Plaintiff, (*Id.* ¶ 34), she does not allege any facts supporting a plausible inference UPS "allowed such conduct."   Accordingly, the claim must be DISMISSED as not plausibly pled.

The Court cannot address Defendant's workers compensation exclusivity argument until it understands the basis for Plaintiff's intentional infliction of emotional distress claim.

## IV.   BREACH OF CONTRACT (FIFTH CAUSE OF ACTION)

Plaintiff's fifth cause of action is for "breach of contract" against UPS.  (Dkt. No. 1-1 at 16.)  She alleges she "entered into an employment contract with Defendant" in which "Defendant agreed to pay plaintiff's hourly wages."  (*Id.* ¶ 100.)  According to Plaintiff, she "at all times fulfilled her duties and conditions under the contract."  (*Id.* ¶ 104.)  However, she was harmed by a "wrongful termination." (*Id.*¶ 105.)

Under California law, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008), *as modified on denial of reh'g* (Feb. 5, 2008).

To state a claim for a breach of contract, "it is absolutely essential to plead the terms of the contract either [verbatim] or according to legal effect."  *Twaite v. Allstate Ins. Co.*, 216 Cal. App. 3d 239, 252 (1989); *see also Maxwell v. Dolezal*, 231 Cal. App. 4th 93, 98 (2014) ("In an action based on a written contract, a plaintiff may plead the legal effect of the contract rather than its precise language.") (cleaned up); *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 979–80 (N.D. Cal. 2014) (explaining the plaintiff must allege "the material terms of a specific contract" and "state which obligations a defendant allegedly breached").  A "[p]laintiff fails to give Defendant fair notice of the breach of contract claim when" the plaintiff "does not identify the specific terms of the specific agreements that Defendant allegedly breached."  *Bella Canvas, LLC v. TSC Apparel, LLC*, No. 2:20-CV-05947-RGK-AS, 2020 WL 7048306, at *2 (C.D. Cal. Sept. 17, 2020); *see also Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930 (N.D. Cal. 2012) ("The complaint must identify the specific provision of the contract allegedly breached by the defendant.").

Plaintiff has not pled any terms of her contract with Defendant other than "Defendant agreed to pay plaintiff's hourly wages."  (Dkt. No. 1-1 ¶ 100.)  There are no factual allegations explaining how Defendant breached that provision of the contract, nor has she identified any other provisions of the contract.  While Plaintiff alleges she was harmed by a "wrongful termination."

1  (*Id.*¶ 105), Plaintiff does not allege any specific facts related to this wrongful termination, such as

2  when she was terminated or if she was terminated from UPS entirely, or only from a specific

3  position at UPS.  Moreover, Plaintiff's pleadings related to this alleged "wrongful termination" are

4  confusing: she alleges "[a]s a direct, foreseeable, and proximate result of Defendants' [sic] acts,

5  Plaintiff has been harmed in that *he* suffered deterioration of health; loss of job; and the loss of

6  salary, wages, bonuses, and benefits that *he* would have received but for the wrongful

7  termination."  (Dkt. No. 5 ¶ 105 (emphasis added).)  The Court is perplexed by the inclusion of

8  male pronouns in this allegation but assumes for the purposes of this order the paragraph is

9  referencing Tami Rankins as Plaintiff.  Plaintiff must include additional factual allegations related

10  to an alleged wrongful termination in any future amended complaint, if she is indeed alleging she

11  was wrongfully terminated.  So, Plaintiff's contract cause of action is DISMISSED.

12        The Court declines to address Defendant's preemption argument.  It relies on a declaration

13  asserting Plaintiff is a union employee, but UPS offers no authority, and the Court is not aware of

14  any, that permits consideration of a fact asserted in a declaration on a 12(b)(6) motion to dismiss.

15  **V.    LEAVE TO AMEND**

16        Rule 15(a) is very liberal and leave to amend "shall be freely given when justice so

17  requires."  *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).  The

18  Court therefore gives Plaintiff leave to amend her complaint.  Plaintiff shall file any amended

19  complaint by February 16, 2024.

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For the reasons stated above, the Court GRANTS UPS's motion to dismiss with leave to amend.  Plaintiff's amended complaint, if any, shall be filed by February 16, 2024.  Plaintiff is cautioned to carefully review the amended complaint before filing to ensure it refers to allegations specific to Tami Rankins and, if exhibits are attached, that the complaint accurately describes the attached exhibits.  If no amended complaint is filed by that date, the action will be dismissed with prejudice. The initial case management conference set for February 15, 2024 is continued to March 21, 2024 at 1:30 p.m. by a Zoom videoconference. Joint statement is due by March 14, 2024.

**IT IS SO ORDERED.**

Dated: January 25, 2024

JACQUELINE SCOTT CORLEY
United States District Judge