1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    TAMI RANKINS,                            Case No.  3:23-cv-05785-JSC

8                    Plaintiff,

9         v.                                  ORDER RE: DEFENDANT'S MOTION
                                              TO DISMISS PLAINTIFF'S FIRST
10   UNITED PARCEL SERVICE, INC.,             AMENDED COMPLAINT

                     Defendant.               Re: Dkt. No. 30
11

12

13          Tami Rankins sues United Parcel Service, Inc. ("UPS") for discrimination because of her

14   age and gender, the intentional infliction of emotional distress, and for a breach of her

15   employment contract with the company, in violation of California laws.  (Dkt. No. 26.)[1]  Now

16   pending before the Court is UPS's motion to dismiss.  (Dkt. No. 30.)  Having carefully considered

17   the briefing, and with the benefit of oral argument on April 18, 2024, the Court GRANTS

18   Defendant's motion.  Plaintiff failed to exhaust her FEHA claims, and her contract claim is

19   preempted; so, both claims are dismissed without leave to amend.  Because Plaintiff's intentional

20   infliction of emotional distress claim could be saved with additional factual allegations, that claim

21   is dismissed with leave to amend.

22                         **AMENDED COMPLAINT ALLEGATIONS**

23          Rankins "is a woman over forty years of age" who lives in California.  (Dkt. No. 26 ¶ 10.)

24   She is "a large African American woman."  (*Id.* ¶ 90.)  She "was hired by UPS on March 15,

25   1989, for the position of an International Auditor and Irregular Pick Off."  (*Id.* ¶ 29.)  She has

26   "worked at UPS for over 32 years."  (*Id.* ¶ 30.)

27   _____

28   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

On September 14, 2017, Vince Owens "made a comment . . . that Rankins need keep her ass on the other side of the unload," and said, "Don't do anything she [Rankins] says because she doesn't run shit!" (*Id.* ¶ 32.) In October of 2017, Owens "continued making various jeers and comments aimed at Rankins during their work." (*Id.* ¶ 34.) "Many of these comments pertained to Rankins' gender." (*Id.*) The situations continued for the following several months. (*Id.* ¶ 37.)

On May 1, 2018, "Rankins was called to the office of a superior who questioned why she had not reached out to her if the situation was continuing." (*Id.* ¶ 38.) "Rankins expressed that her past attempts had yielded no results or improvements to her work life and that she had lost faith in the system that was allowing her abusers to get away with it." (*Id.*) "Rankins was told that someone would be contacting her." (*Id.*)

On May 10, 2018, Moses Young "threatened to physically beat Rankins as well as insulted her for her weight calling her a 'fat bitch.'" (*Id.* ¶ 40.) Rankins reported the incident to the "Oakland Hub Steward Ed Haynes and Dave Warren." (*Id.* ¶ 42.) "Incidents between Rankins" and Owens and Young "did not improve." (*Id.* ¶ 44.) "April and May of 2019 saw repeated incidents with Moses [Young]." (*Id.* ¶ 49.)

In March 2020, Rankins told Angel Dunn, who worked in Human Resources, about the situation with Owens and Young. (*Id.* ¶ 51.) In March, Dunn and Rankins spoke, and Dunn "apologized on behalf of UPS and stated that this should have been solved a long time ago, and that this was a hostile work environment." (*Id.* ¶ 52.) Dunn also said Rankins' "boss and the union would be notified." (*Id.*)

Despite that meeting, "[h]arassment against Rankins did not stop," even though "Plaintff has attempted to make complaints to no less than 25 of Defendant's employees that were in a position to assist Plaintiff." (*Id.* ¶¶ 53, 165.) "On May 20, 2020, Vince [Owens] called out to Moses [Young] and nodded toward Rankins and made a fat person gesture with his hands in motion." (*Id.* ¶ 53.) "On May 22, 2020 Vince [Young] walked by Rankins leering and taunting." (*Id.*) "Behavior like this continued daily for the proceeding months." (*Id.*)

Sometime in 2021, Moses Young pointed Rankins and stated, "Mirror Mirror on the wall, whos' the fattest of them all?" (*Id.* ¶ 54.) Moses Young retired early 2023. (*Id.* ¶ 59.)

1    Plaintiff filed this action in California state court on August 11, 2023.  (Dkt. No. 1-1 at 2.)

2                                              **DISCUSSION**

3    **I.    FEHA CLAIMS**

4        Plaintiff's first three causes of action allege violations of California's Fair Employment

5    and Housing Act ("FEHA"), Cal. Gov't Code § 12900 *et seq.*  Defendant moves to dismiss these

6    claims for failure to exhaust administrative remedies because Rankins failed to meet the deadline

7    to sue for her first administrative complaint, and her second administrative complaint failed to

8    provide fair notice of her claims.

9        "Before filing a civil action alleging FEHA violations, an employee must exhaust his or

10   her administrative remedies."  *Wills v. Superior Ct.*, 195 Cal. App. 4th 143, 153 (2011), *as*

11   *modified on denial of reh'g* (May 12, 2011); *see also* Cal. Gov't Code § 12965.  "[I]t is plaintiff's

12   burden to plead and prove timely exhaustion of administrative remedies, such as filing a sufficient

13   complaint with [DFEH] and obtaining a right-to-sue letter."  *Kim v. Konad USA Distribution, Inc.*,

14   226 Cal. App. 4th 1336, 1345 (2014) (cleaned up).

15       Under FEHA, employees who believe they have suffered discrimination first file a

16   complaint with the Department of Fair Employment and Housing ("DFEH").  *Schifando v. City of*

17   *Los Angeles*, 31 Cal. 4th 1074, 1081–82 (2003), *as modified* (Dec. 23, 2003).  This complaint

18   "must . . . identify[] the conduct alleged to violate FEHA."  *Wills*, 195 Cal. App. 4th at 153.  "The

19   purpose of FEHA's administrative exhaustion requirement is to ensure DFEH is provided the

20   opportunity to resolve disputes and eliminate unlawful employment practices through

21   conciliation."  *Wills v. Superior Ct.*, 195 Cal. App. 4th 143, 156 (2011), *as modified on denial of*

22   *reh'g* (May 12, 2011).  Therefore, "[t]o exhaust his or her administrative remedies as to a

23   particular act made unlawful by the [FEHA], the claimant must specify that act in the

24   administrative complaint, even if the [administrative] complaint does specify other cognizable

25   wrongful acts."  *Kaur v. Foster Poultry Farms LLC*, 83 Cal. App. 5th 320, 355 (2022), *reh'g*

26   *denied* (Oct. 6, 2022) (quoting *Martin v. Lockheed Missiles & Space Co.* 29 Cal. App. 4th 1718,

27   1724 (1994)).

28       Before January 1, 2020, individuals had one year from the unlawful practice to file a

*United States District Court*
*Northern District of California*

3

1    complaint with the DFEH.  *See* former Cal. Gov't Code § 12960(d).  Since January 1, 2020, a

2    "complaint alleging a violation of [FEHA] shall not be filed after the expiration of three years

3    from the date upon which the unlawful practice or refusal to cooperate occurred," so long as that

4    claim had not previously lapsed under the one-year statute of limitations.  Cal. Gov't Code §

5    12960(e)(5); ); 2019 Cal. Legis. Serv. Ch. 709 (A.B. 9) (West) §§ 1, 3 (extending the statute of

6    limitations from one year to three but indicating the amendment does not "revive lapsed claims");

7    *see also Pollock v. Tri-Modal Distribution Servs., Inc.*, 11 Cal. 5th 918, 931 (2021) (explaining the

8    2020 amendment to FEHA's statute of limitations  "uses virtually identical language" as the

9    previous statute-of-limitations "but allows for a period of three years").

10          There are two types of FEHA complaints: individuals can file a complaint "for

11   investigation," requesting the DFEH investigate the allegations, Cal. Code Regs. tit. 2, § 10004(a);

12   or individuals can file a complaint requesting "an immediate right-to-sue notice," in which case

13   DFEH does not investigate the claims.  Cal. Code Regs. tit. 2, § 10004(c).  After receiving the

14   complaint, DFEH provides the complainant with a "right-to-sue letter"—either after an

15   investigation or immediately when the complainant forgoes the DFEH investigation process.

16   Once the complainant receives the right-to-sue letter, she can bring her claims as a civil action in

17   court.  *Schifando*, 31 Cal. 4th at 1082.  The ensuing "civil action's permissible scope" is limited

18   "to the information brought to DFEH's attention when it conducts an administrative investigation,

19   or to information DFEH reasonably should have discovered during its investigation."  *Wills*, 195

20   Cal. App. 4th at 153.  Finally, "the person claiming to be aggrieved may bring a civil action . . .

21   within one year from the date of" the right-to-sue letter.  Cal. Gov't Code § 12965(c)(1)(C).

22          So, FEHA is governed by two statutory deadlines: since 2020, an individual can bring a

23   complaint to the DFEH for any unlawful action that occurred within the previous three years (and

24   before 2020, within one year).  Cal. Gov. Code § 12960(e)(5).  After the complainant receives a

25   right-to-sue notice, that complainant has one year to file a civil action arising from any of the

26   events in her DFEH complaint. Cal. Gov't Code § 12965(c)(1)(C).

27

28

United States District Court
Northern District of California

Plaintiff "filed two complaints with the DFEH."[2]  (Dkt. No. 26 ¶ 23.)  Each is discussed below.

### A.      Rankins' First Administrative Complaint

Plaintiff filed her first administrative complaint on September 26, 2019—when the one-year statute of limitations applied.  (*Id.* ¶¶ 24-26.)  Plaintiff's first DFEH complaint alleged:

> From September 2017 to the present [e.g., September, 2019], I have been sexually harassed by Moses Young (Irregular Packages/Unloader) and Vincent Owens (Irregular Packages/Pick-Off) which is discrimination due to my gender (female) and I have been subjected to workplace harassment due to race (African American). The harassment was verbal in nature and occurs on a weekly basis. Examples include but are not limited to the following: Both Moses Young and Vincent Owens have used the "N" word, they have called me a fat bitch, and Moses has threatened to beat my ass like a man and said that he would unzip his pants and show his manhood. (Details on file with DFEH). I have reported the harassment to Dave Warren (Manager), Lori Seymor (Labor Relations), Tim Brown (Manager), Marlow Austin (Human Resources Manager), Chris Vigil (Union Steward), Dee Carter (Security Manager), Ace Last Name Unknown (Supervisor), April Williams (Manager), Brandi Vargas(Supervisor), Tom Kelley (Manager), and Marty Fretas (Business Agent) on numerous occasions; however, I do not believe any corrective action has been taken and the harassment has continued.

(Dkt. No. 26 at 26.)  This first complaint does not indicate counsel assisted Rankins in filing the complaint and does not request an immediate right to sue.  (*Id.* at 24-27.)  Almost one year after the complaint was filed, on September 24, 2020, the DFEH sent Rankins a right-to-sue letter that "authorize[d]" Rankins "to bring a civil action . . . under the provisions of the California Fair Employment and Housing Act . . . within one year."  (*Id.* at 27.)  Rankins did not bring suit within that year deadline.  Therefore, Plaintiff's current lawsuit cannot be premised on her 2019 complaint to the DFEH.

Rankins asserts she can sue based on her 2019 complaint because either the equitable tolling doctrine or the continuing violation doctrines saves her claims from her first complaint.

---

[2] UPS asks the Court to take judicial notice of Plaintiff's two complaints and right-to-sue letters. (Dkt. No. 30-9 ¶¶ 4-7.)  As these documents are attached to Plaintiff's complaint, Defendant's motion is moot.  The Court considers these documents as part of its analysis. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (explaining in reviewing a motion to dismiss, courts may consider documents attached to the complaint).

1    "Equitable tolling allows a plaintiff who has a choice of legal remedies to pursue one

2    remedy without simultaneously pursuing another remedy." *Acuna v. San Diego Gas & Elec. Co.*,

3    217 Cal. App. 4th 1402, 1416, (2013).  Equitable tolling "generally requires" the plaintiff to show

4    she "is seeking an alternate remedy in an established procedural context." *Id.*  Rankins asserts her

5    "internal grievances" to her "superior" constituted such an alternate remedy.  (Dkt. No. 35 at 9.)

6    But, "[i]nformal negotiations or discussions between an employer and employee do not toll a

7    statute of limitations under the equitable tolling doctrine"—such tolling requires a formal legal

8    action or established procedural context. *Id.*  Plaintiff "does not allege any facts showing she was

9    pursuing an alternate remedy that excused her from timely filing her administrative claim and/or

10   from filing her lawsuit." *Id.*  So, the equitable tolling doctrine cannot extend the statute-of-

11   limitations for Plaintiff's FEHA claims.  Plaintiff's citation to *Navarrete v. Arana*, is not to the

12   contrary: in *Navarrete*, the Ninth Circuit held "verbal complaints to [the plaintiff's] supervisor did

13   not constitute an alternative 'legal remedy' or 'claim' to establish equitable tolling."  716 F. App'x

14   726, 727 (9th Cir. 2018) (citing *Acuna*, 217 Cal. App. 4th at 1416).  For the same reasons,

15   Plaintiff's complaints to her supervisors were insufficient to equitably toll her claims.

16       "[T]he continuing violation doctrine comes into play when an employee raises a claim

17   based on conduct that occurred in part outside the limitations period." *Richards v. CH2M Hill,*

18   *Inc.*, 26 Cal. 4th 798, 812 (2001).  The California Supreme Court has applied the continuing

19   violation doctrine to California Government Code § 12960—which provides an employee must

20   make a complaint to DFEH within three years (formerly, one year) of the unlawful conduct. *Id.*

21   The court held "an employer's persistent failure to . . . eliminate a hostile work environment . . . is

22   a continuing violation if the employer's unlawful actions are (1) sufficiently similar in kind;" "(2)

23   have occurred with reasonable frequency;" and "(3) [] have not acquired a degree of permanence,"

24   where "permanence" means "an employer's statements and actions make clear to a reasonable

25   employee that any further efforts at informal conciliation to obtain reasonable accommodation or

26   end harassment will be futile." *Id.* at 823.  However, the Court is not aware of any California

27   court applying the continuing violation doctrine to California Government Code § 12965—the

28   section that provides an employee has one year to file suit after receiving a right to sue letter.

Other federal district courts have held the continuing violations doctrine does not extend the one-year deadline of California Government Code § 12965.  For example, in *Collins v. Wal-Mart Stores, Inc.*, the plaintiff made a first complaint to DFEH and received a right-to-sue notice in 2021 but did not sue within the one-year deadline following the issuance of that letter.  No. 3:23-CV-01368-RBM-DEB, 2024 WL 56993, at *5–6 (S.D. Cal. Jan. 4, 2024).  The plaintiff then filed a second complaint, received a second right-to-sue letter on April 13, 2023, and sued on June 16, 2023—within the one-year deadline for the second right-to-sue letter.  *Id.* at *6.  The court held the plaintiff's "FEHA claims pre-dating his [first] right-to-sue letter are time-barred."  *Id.* at *5.  The court explained "the continuing violations doctrine is not a listed exception to the one-year statutory deadline."  *Id.* at *6; *see also* Cal. Gov. Code § 12965(e)–(f) (indicating the one-year statutory period can be tolled in two circumstances: (1) while a plaintiff pursues parallel federal administrative remedies with the Equal Employment Opportunity Commission ("EEOC"); and (2) while the EEOC defers an investigation to the Civil Rights Department).  So, the court held "while the continuing violations doctrine is an equitable exception to the three-year statutory period set forth in California Government Code section 12960(e)(5), it is inapplicable to save claims that were already the subject of a right-to-sue letter and are now subject to the one-year statutory period to file suit."  *Id.; see also Gillette v. Stater Bros. Markets*, No. ED-CV-19-1292-JVS-KKx, 2020 WL 886300, at *4 (C.D. Cal. Jan. 24, 2020) (holding "the continuing violations doctrine does not apply" to the one year statutory requirement of California Government Code § 12965).  Applying the reasoning of those cases, Rankins is barred from suing for conduct that occurred before September 24, 2020—the date she received her first right to sue letter.

**B.     Rankins' Second Administrative Complaint**

Rankins' second complaint was filed with the assistance of Plaintiff's current counsel on October 7, 2022—when the three-year statute of limitations applied.  (*Id.* ¶¶ 25-27; and at 31-33.)  Plaintiff's second complaint states:

> Complainant alleges that on or about **October 6, 2022**, respondent took the following adverse actions:
>
> **Complainant was** harassed because of complainant's race, ancestry, national origin (includes language restrictions), color, sex/gender,

1              gender identity or expression, sexual orientation, genetic information
           or characteristic, disability (physical or mental), medical condition

2              (cancer or genetic characteristic), age (40 and over), other, sexual
           harassment-hostile environment, sexual harassment- quid pro quo,

3              association with a member of a protected class, family care or medical
           leave (cfra), pregnancy, childbirth, breast feeding, and/or related

4              medical conditions.

5   (Dkt. No. 26 at 31.)  The complaint then indicates "**Complainant was discriminated against**"

6   and "**Complainant experienced retaliation**" for almost identical reasons.  (*Id.* at 31-32.)

7   Plaintiff requested "an immediate Right to Sue."  (*Id.* at 29.)  On October 7, 2022, the DFEH sent

8   Plaintiff a right-to-sue letter that again indicated any "civil action must be filed within one year

9   from the date of [the] letter." (*Id.* at 29.)  Plaintiff sued within that year deadline, on August 11,

10   2023.  (Dkt. No. 1-1 at 2.)

11         Plaintiff's 2022 complaint does not satisfy the administrative exhaustion requirement

12   under California law because it fails to provide any relevant factual details that would allow

13   DFEH to investigate the claims alleged in her complaint.  "The function of an administrative

14   complaint is to provide the basis for an investigation into an employee's claim of discrimination

15   against an employer." *Martin v. Fisher*, 11 Cal. App. 4th 118, 122 (1992).  Plaintiff's 2022

16   complaint provides no factual allegations that would permit such an investigation.  Further,

17   California regulations provide a complaint to the DFEH "shall state the name and address of the

18   person[ or] employer, . . . alleged to have committed the unlawful practice complained of," and

19   "shall set forth the particulars thereof."  Cal. Gov't Code § 12960(c).  Plaintiff's 2022 complaint

20   fails to state *any* particulars of the alleged discrimination, and therefore does not meet the statutory

21   requirements for DFEH complaints. While Plaintiff's 2019 complaint may have identified

22   sufficient factual detail to put UPS on notice of Plaintiff's claims, Plaintiff's 2022 complaint did

23   not incorporate the allegations of her 2019 complaint or even refer to that earlier 2019 complaint

24   at all; instead, it is based exclusively on undisclosed conduct that occurred on or about October 6,

25   2022.

26         This case is similar to *Goins v. United Parcel Serv. Inc.*,[3]  when a court dismissed many of

27   

28   _____
[3] UPS requests the Court take judicial notice of the first amended complaint in the *Goins* action,
the second amended complaint in that action, and the order dismissing the *Goins* action. (Dkt. No.

United States District Court
Northern District of California

1    the FEHA claims in a putative class action alleging employment discrimination at UPS due to the

2    plaintiffs' failure to give the defendant effective notice of the relevant claims.   No. 21-CV-08722-

3    PJH, 2023 WL 3047388 at *15 (N.D. Cal. Apr. 20, 2023).   Rankins was one of the proposed class

4    representatives whose claims were dismissed.  *Id.* at *3, *15.  The *Goins* court found one of the

5    named plaintiffs' administrative complaints insufficient to administratively exhaust her claims

6    because, much like Rankins' 2022 complaint, it:

7                    [a]llege[d] company-wide and nation-wide discrimination occurring
                     on or about a single date, January 22, 2023, without naming any
8                    perpetrators of the discrimination, and without listing any locations at
                     which the alleged discrimination took place. . . . This most recent
9                    administrative charge thus fails to achieve one of its most important
                     purposes—it fails to give the charged party effective notice of the
10                   claim. Further, it fails to effectively narrow the issues for
                     adjudication, instead seeking to expand them to include any form of
11                   discrimination. The January 2023 administrative charge is therefore
                     ineffective to amend the earlier charges, and it does not exhaust their
12                   claims.

13   *Id* at *7 (N.D. Cal. Apr. 20, 2023).  The Court finds the *Goins*' court's analysis persuasive and it

14   applies equally to Plaintiff's 2022 administrative complaint.

15          Granted, California courts have cautioned "FEHA's exhaustion requirement should not be

16   interpreted as a 'procedural gotcha.'"  *Clark v. Superior Ct.*, 62 Cal. App. 5th 289, 293 (2021).

17   (quoting *People v. Matthews* 32 Cal. App. 5th 792, 798 (2019)).  "This is particularly true" when

18   "the plaintiff's error could not possibly have hampered any administrative investigation or

19   prejudiced the defendant in any judicial proceedings."  *Id.*  Moreover, "as a practical matter, there

20   was no administrative process to exhaust, because [Plaintiff] requested and received an immediate

21   right-to-sue notice in this case pursuant to California Code of Regulations, title 2, section 10005

22   on the same day that she filed her DFEH Complaint."  *Id.* at 16.

23          However, no California case the Court is aware of has indicated a request for an immediate

24   right to sue letter eliminates the requirement for a DFEH complaint to provide fair notice.  *See*

25

26   ─────────────────────
     30-9 ¶¶ 1-3.)  The Court takes judicial notice for the existence of these documents, though not as
27   to the truth of the matters contained within them because "when a court takes judicial notice of
     another court's opinion, it may do so not for the truth of the facts recited therein, but for the
28   existence of the opinion, which is not subject to reasonable dispute over its authenticity."  *Lee v.
     City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (cleaned up).

United States District Court
Northern District of California

*Clark*, 62 Cal. App. 5th at 305 n.7 ("Neither party has cited any case law discussing the interaction between the exhaustion doctrine and the availability of the immediate right-to-sue notice under California law, and our research has uncovered no such case law.").  Moreover, in *Clark*, the court held the plaintiff's complaint would "give the administrative agency an opportunity to investigate and conciliate the claim," as the only issue with the complaint was the "employer [wa]s not referred to by its proper legal name," though the complaint "clearly and unequivocally reflected" the plaintiff's intent to name the defendant as a respondent. *Id.* at 293, 307.  Here, Plaintiff's 2022 complaint did not give the administrative agency any opportunity to investigate the claims she brings in this lawsuit, as the DFEH complaint contains no factual details relevant to her allegations here.  Indeed, the 2022 DFEH complaint only alleges discriminatory conduct took place on October 6, 2022—a date that is entirely absent from her complaint allegations.

At the hearing, Plaintiff cited *Acuna v. San Diego Gas & Electric Co.*, arguing her two complaints could be "read together," with the details of her first complaint filling in for the lack of details in her second complaint.  217 Cal. App. 4th 1402 (2013).  In *Acuna*, the plaintiff also filed a series of complaints with DFEH: a 2006 complaint alleging she was "discriminated and harassed because [she] was an Hispanic female" and had "filed a Worker's Compensation claim," a 2007 DFEH complaint alleging her employer "engaged in disability discrimination and failed to provide reasonable accommodation for her disability," and a 2008 complaint alleging discrimination, harassment, and retaliation and referring to "[p]revious protests and reports of discrimination" and her "previous DFEH Complaints."  *Id.* at 1408-10.  Even though the plaintiff's third DFEH complaint referred to her previous two complaints, the court held she could not "revive these expired claims by filing a new DFEH complaint many years after the alleged racial discrimination took place.  *Id.* at 1417.

Plaintiff also cites *Rodriguez v. Airborne Express*, asserting it demonstrates "all Plaintiff needed to do was check the box on the DFEH form to meet the exhaustion requirement.  265 F.3d 890, 896 (9th Cir. 2001).  But the court in *Rodriguez* found the plaintiff failed to exhaust his administrative remedies as to his claim for disability discrimination because his DFEH complaint only included an allegation as to ethnic discrimination and "Rodriguez's charge of discrimination

10

against Mexican–Americans would not reasonably trigger an investigation into discrimination on the ground of disability." *Id.* at 897.  So, *Rodriguez* supports the California cases indicating the relevant question is whether the DFEH complaint puts the agency on fair notice of the claims.

So, the Court GRANTS Defendant's motion to dismiss Plaintiff's first three causes of action.  As Plaintiff has already had one chance at amendment, and has not suggested she could allege any additional facts to plausibly support an inference she exhausted her FEHA claims, they are DISMISSED WITHOUT LEAVE TO AMEND.

## II.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM (FOURTH CAUSE OF ACTION)

Plaintiff's fourth cause of action alleges Defendant's "conduct in allowing the abuse of Plaintiff . . . was extreme and outrageous and went beyond all bounds of decency," and therefore constituted intentional infliction of emotional distress under California law.  (Dkt. No. 26 ¶ 19.) Under California law:

> [T]o state a cause of action for intentional infliction of emotional distress a plaintiff must show: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

*Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228, 1259 (2005) (cleaned up).  Outrageous conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Id.* (quotations and citations omitted).  Threats of physical violence can qualify as such outrageous conduct. *See Kiseskey v. Carpenters' Tr. for So. California*, 144 Cal. App. 3d 222, 230 (1983).

Plaintiff alleges one of her coworkers "said he would beat plaintiff's ass."  (Dkt. No. 26 ¶¶ 154, 40.)  Plaintiff furthers alleges her supervisor was present for these threats but "would not turn around," and even though Plaintiff called security, security informed Plaintiff they did not want to come to the scene because they were "at home."  (*Id.* ¶¶ 158-59.)  Plaintiff asserts the coworker who threatened her "was not terminated nor separated from her" so "the harassment continued." (*Id.* ¶ 160.)  Finally, Plaintiff connects UPS to the conduct alleged, asserting she "attempted to

11

1    make complaints to no less than 25 of Defendant's employees that were in a position to assist

2    Plaintiff," yet UPS did nothing to prevent the harassment.  (*Id.* ¶ 165.)  So, Plaintiff has alleged

3    sufficiently outrageous conduct under California law.

4           Defendant contends Plaintiff's complaint "contains nothing more than garden-variety

5    employment discrimination/harassment allegations that have been held insufficient to support an

6    [Intentional Infliction of Emotional Distress] claim."  (Dkt. No. 30 at 14.)  Defendant cites *Hobdy*

7    *v. Los Angeles Unified Sch. Dist.*, 386 F. App'x 722, 725 (9th Cir. 2010), in which the Ninth

8    Circuit affirmed a district court's dismissal of an intentional infliction of emotional distress claim.

9    But the *Hobdy* court explained "some employment discrimination cases will have fact patterns

10   sufficient to qualify as extreme and outrageous conduct," though it noted "every case of

11   employment discrimination does not reach that point."  *Id.*  Defendant also cites *Yurick v. Superior*

12   *Court* as evidence Plaintiff failed to allege outrageous conduct.  209 Cal. App. 3d 1116 (Ct. App.

13   1989), *modified* (May 18, 1989).  But in *Yurik*, the court found the plaintiff had not established

14   outrageous conduct because "it appear[ed] . . . that [the defendant's] allegedly actionable remarks

15   were only milder expressions of his customary and usual manner of communicating in the

16   workplace."  *Id.* at 1129.  In contrast, in this case Plaintiff alleges a co-worker threatened her with

17   violence, among other harassing conduct, and UPS failed to do anything about it, despite Plaintiff

18   seeking help from 25 different UPS employees.  While "[a] simple pleading of personnel

19   management activity is insufficient to support a claim of intentional infliction of emotional

20   distress, even if improper motivation is alleged," Plaintiff's allegations rise above "personnel

21   management activity."  *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996).  She alleges

22   specific threats of violence and UPS's failure to act when she complained of those threats.

23   Drawing all reasonable inferences in Plaintiff's favor, she has pled outrageous conduct under

24   California law.

25          Defendant also argues this claim is "barred by the exclusivity provisions of the Workers'

26   Compensation Act," California Labor Code § 3600 *et seq.*  "Where the provisions of the workers'

27   compensation system apply, an employer is liable without regard to negligence for any injury

28   sustained by its employees arising out of and in the course of their employment" and the employee

United States District Court
Northern District of California

1    "is generally prohibited from pursuing any tort remedies against the employer or its agents that

2    would otherwise apply." *Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 96 (2017)

3    (citing Cal. Lab. Code § 3600(a)).  But "[e]ven where an injury is otherwise compensable under

4    the workers' compensation system, a cause of action seeking damages based on the injury may

5    nevertheless be allowable where the employer's conduct falls outside the compensation bargain."

6    *Id.*  "The exclusive remedy rule is an affirmative defense to an action at law." *Vann v. City &*

7    *Cnty. of San Francisco*, 97 Cal. App. 5th 1013, 1021 (2023).  "[W]here the complaint

8    affirmatively alleges facts indicating coverage by the workers' compensation laws, if it fails to

9    state additional facts negating application of the exclusive remedy provision, no civil action will

10   lie and the complaint is subject to" a motion to dismiss.  *Id.*

11       Defendant has failed to establish the worker's compensation exclusive remedy provision

12   bars Plaintiff's intentional infliction of emotional distress claim as a matter of law.  "A number of

13   California authorities have concluded claims for intentional infliction of emotional distress in the

14   employment context may be asserted where the actionable conduct also forms the basis for a

15   FEHA violation." *Light*, 14 Cal. App. 5th at 97 (citing cases).  Because Plaintiff has alleged a

16   claim for intentional infliction of emotional distress involving conduct that also is prohibited by

17   FEHA, at the motion to dismiss stage, Defendant has not established the claim is barred.

18       However, Plaintiff fails to plead any facts indicating she suffered "severe or extreme

19   emotional distress," as required to state a claim for intentional infliction of emotional distress.

20   Plaintiff pleads: "Harassment victims such as Plaintiff suffer from depression, anxiety and low

21   self-esteem, and other similar emotional maladies. Many victims exhibit negative cognitive and

22   emotional disorder aftereffects such as Post-Traumatic Stress Disorder (PTSD)."  (Dkt. No. 26 ¶

23   4.)  Plaintiff does not plead *she* ever suffered from depression, anxiety, low self-esteem, or PTSD.

24   She also pleads she "suffered deterioration of health; loss of job; and the loss of salary, wages,

25   bonuses, and benefits" (*id.* ¶ 81), "emotional distress and decreased job satisfaction" (*id.* ¶ 91),

26   and "humiliation, embarrassment, and mental and physical anguish" (*id.* ¶ 98), but she does not

27   plead anything specific about her emotional distress.  *See Hughes v. Pair*, 46 Cal. 4th 1035, 1051

28   (2009) ("[P]laintiff's assertions that she has suffered discomfort, worry, anxiety, upset stomach,

United States District Court
Northern District of California

13

1   concern, and agitation . . . do not comprise emotional distress of such substantial quality or

2   enduring quality that no reasonable [person] in civilized society should be expected to endure it"

3   and therefore do not constitute "severe or extreme emotional distress.") (cleaned up).

4       So, Defendant's motion to dismiss Plaintiff's claim for intentional infliction of emotional

5   distress is GRANTED WITH LEAVE TO AMEND.

6   **III.    BREACH OF CONTRACT (FIFTH CAUSE OF ACTION)**

7       Plaintiff's fifth cause of action is for "breach of contract" against UPS.  (Dkt. No. 26 at

8   20.)  She alleges she "entered into an employment contract with Defendant" in which "Defendant

9   agreed to pay plaintiff's hourly wages."  (*Id.* ¶ 175.)  "The existence of the employment contract

10  was evidenced by the Northern California Supplemental Agreement," which Plaintiff attaches to

11  her complaint.[4]  (*Id.* ¶ 176.)  Plaintiff asserts "at all times" she "fulfilled the terms of the contract

12  which in essence required that she provide her labor in return for the agreed upon wages."  (*Id.* ¶

13  177.)  Further, "UPS[ ] was bound by the contract to provide a safe working environment."  (*Id.* ¶

14  178.)  Plaintiff asserts UPS breached the "contract, particularly because the collective bargaining

15  agreement (CBA) includes provisions related to workplace safety and compliance with relevant

16  regulations," but UPS engaged in "repeated discrimination" and violations of Occupational Safety

17  and Health Administration ("OSHA") regulations.  (*Id.* ¶ 179.)  Specifically, Plaintiff asserts UPS

18  violated "Article 1," "Article 5 Section 1, and Article 11, Section 2" of the Collective Bargaining

19  Agreement.  (*Id.* ¶¶ 179, 186.)

20      The collective bargaining agreement Plaintiff attaches to the complaint is between various

21  unions and UPS.  (Dkt. No. 26 at 35.)  Even assuming Plaintiff plausibly pled a breach of contract,

22

---

23  [4] UPS requests the Court take judicial notice of UPS' National Master Agreement with the
    International Brotherhood of Teamsters Agreement for the period August 1, 2018 through July 31,
24  2023. (Dkt. No. 30-9 ¶ 8.)  Generally, a district court cannot "consider material outside the
    pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)." *Khoja v. Orexigen*
25  *Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  Defendant fails to explain the relevance of
    this document.  Further, it is not part of Plaintiff's complaint.  So, the Court declines to take
26  judicial notice of it.  UPS also requests the Court take judicial notice of the Northern California
    Supplemental Agreement between with Teamster Local Union 70, 87, 137, 150, 287, 315, 386,
27  431, 439, 533, 665, 856, 890, 912, 948, 2785 and United Parcel Service for the period August 1,
    2018 through July 31, 2023.  As this document is part of Plaintiff's complaint, Defendant's
28  request for judicial notice is moot.  The Court considers the document as it is part of the
    complaint. *Symington*, 51 F.3d at 1484.

United States District Court
Northern District of California

because Plaintiff is asserting a breach of the collective bargaining agreement, any such a breach is preempted by the Labor Management Relations Act ("LMRA") § 301. "Although section 301 does not preempt every employment dispute tangentially involving a provision of a collective bargaining agreement, state claims that require interpretation of a collective bargaining agreement, or depend substantially upon analysis of a collective bargaining agreement's terms, are preempted." *Jackson v. S. California Gas Co.*, 881 F.2d 638, 643 (9th Cir. 1989) (citations omitted). Because Plaintiff's breach of contract claim is a "a claim for violation of the labor agreement," it is "preempted." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018); *see also Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 23 (1983) ("[T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization.") (cleaned up).

Plaintiff asserts "Plaintiff cannot bargain for gender discrimination, harassment, IIED, fat-shaming, assault or illegal bullying" as they "were not contemplated by UPS, Rankins or the Union." (Dkt. No. 35 at 15.) But the contract Plaintiff provided specifically forbids illegal discrimination. (Dkt. No. 26 at 59-60.) Further, even if the Court accepted Plaintiff's argument these claims were not contemplated by the parties to the contract and therefore were not a part of the contract, then the Court would have to find no contractual provisions were breached. Plaintiff next points to *Prachasaisoradej v. Ralphs Grocery Co.*, 42 Cal. 4th 217, 226 (2007), which explained the lower court in the case held claims that do "not depend on construction or application of the [collective bargaining agreement], but arose under independent provisions of state law," are not preempted by the LMRA. Accordingly, Plaintiff's FEHA claims—which are independent provisions of state law—are not preempted by § 301. However, Plaintiff's claim for breach of contract, which specifically relies on the union bargaining agreement *is* preempted.

While "an individual employee may bring suit against his employer for breach of a collective bargaining agreement," first, the "employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement" or allege the union "breach[ed] the union's duty of fair representation." *DelCostello v. Int'l Bhd. of Teamsters*,

15

1   462 U.S. 151, 163 (1983); *see also Carr v. Pac. Mar. Ass'n*, 904 F.2d 1313, 1317 (9th Cir. 1990)

2   ("Failure to utilize the [collective bargaining agreement's] grievance procedures, or to invoke

3   them in a timely manner, bars grievants from pursuing remedies in court."); *Bliesner v. Commc'n*

4   *Workers of Am.*, 464 F.3d 910, 913 (9th Cir. 2006) ("An aggrieved party may bring a hybrid fair

5   representation/ § 301 suit against the union, the employer, or both.  In order to prevail in any such

6   suit, the plaintiff must show that the union and the employer have both breached their respective

7   duties.").  But, if a "collective bargaining agreement . . . d[oes] not provide for specific grievance

8   procedures," then "there [i]s nothing to exhaust before recourse could be had to the courts."

9   *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 511 (9th Cir. 1978).

10          Plaintiff's complaint makes no reference to any grievance process contained in collective

11  bargaining agreement.  Nor does she allege the absence of a grievance process.  Plaintiff's

12  response fails to address the grievance issue entirely.  Plaintiff's complaint and response also fail

13  to make any allegations or arguments that the union breached its duty of fair representation.  So,

14  Plaintiff has failed to allege either exhaustion or that the union breached its duty of fair

15  representation.

16          So, Defendant's motion to dismiss Plaintiff's contract claims is DISMISSED WITHOUT

17  LEAVE TO AMEND.

18  **IV.     LEAVE TO AMEND**

19          Rule 15(a) is very liberal and leave to amend "shall be freely given when justice so

20  requires."  *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).  The

21  Court therefore gives Plaintiff leave to amend her complaint as to her fourth cause of action for

22  intentional infliction of emotional distress.  Plaintiff shall file any amended complaint by May 9,

23  2024.

24                                              **CONCLUSION**

25          For the reasons stated above, Defendant's motion to dismiss is GRANTED.  Plaintiff's

26  cause of action for intentional infliction of emotional distress (fourth cause of action) is

27  DISMISSED WITH LEAVE TO AMEND.  Plaintiff's first three causes of action under FEHA

28  and breach of contract (fifth cause of action) are DISMISSED WITHOUT LEAVE TO AMEND.

United States District Court
Northern District of California

The Court sets a case management conference for June 27, 2024 at 1:30 p.m. via Zoom video.  No updated case management conference statement is required.

This order disposes of Dkt. No. 30.

**IT IS SO ORDERED.**

Dated: April 19, 2024

JACQUELINE SCOTT CORLEY
United States District Judge